UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MICHAEL L. WHITTAKER,

    Plaintiff,

-vs-                                     Case No. 6:12-cv-98-Orl-28GJK

WELLS FARGO BANK, N.A.,

    Defendant,

and

NATIONWIDE INSURANCE COMPANY OF FLORIDA, C&N FOUNDATION TECHNOLOGIES, LLC, AMEC-BCI ENGINEERS & SCIENTISTS, INC., and JUDITH K. STEPHENS,

    Interpleader Defendants.
_____

## ORDER

    This cause is before the Court on the Motion to Dismiss Counts Two and Three of the Amended Complaint (Doc. 100), filed by Defendant, Wells Fargo Bank, N.A. The Court has considered Wells Fargo's motion and Plaintiff's Memorandum in Opposition (Doc. 103), and as set forth below, the motion is denied in part and granted without prejudice in part.

### I. Legal Standard

    "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or

'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." LaGrasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

## II. The Allegations of the Amended Complaint

In October 2006, Plaintiff and his then-wife, Judith Stephens, executed a promissory note in favor of Wells Fargo in exchange for a mortgage loan of $190,837.00. (Am. Compl., Doc. 7, ¶¶ 17-18). Wells Fargo was listed as an additional loss payee or mortgagee on the insurance policy covering the property. (Id. ¶ 24). In November 2010, the property suffered damage due to a sinkhole. (Id. ¶ 22).

Based on estimates of the cost of repairing the property, in February and March 2011 the property insurer issued three checks totaling $222,999.24, jointly payable to Plaintiff and Wells Fargo. (Id. ¶¶ 26-27). Plaintiff contacted Wells Fargo and was told to endorse the checks and send them to Wells Fargo's property loss department; Plaintiff did so. (Id. ¶¶ 28-29). Wells Fargo deposited the insurance proceeds in early April 2011. (Id. ¶ 30).

In August 2011, C & N Foundation Technologies, LLC, submitted its final invoice for $98,021.46 to the insurer and Plaintiff for its work on the repairs to the property. (Id. ¶ 31). Plaintiff asked Wells Fargo to pay the invoice, but Wells Fargo withheld payment on the

basis that it had not received forms signed by Stephens. (Id. ¶¶ 32-33). According to Plaintiff, however, the mortgage did not condition disbursement of insurance proceeds on receipt by Wells Fargo of signed forms. (Id. ¶ 34). Another contractor submitted an invoice for $9,629.60 to the insurer on October 12, 2011, and on October 19, 2011, Plaintiff, through his attorney, asked Wells Fargo in writing to disburse the insurance proceeds to pay the two outstanding invoices. (Id. ¶¶ 39-40).

Instead of paying the invoices, however, on October 25, 2011, Wells Fargo applied $175,857.19 of the insurance proceeds to repayment of the note—paying off the loan. (Id. ¶¶ 41, 43). The next day, Wells Fargo sent a check payable to Plaintiff and Stephens in the amount of $47,142.05—the difference between the proceeds and the amount needed to satisfy the loan. (Id. ¶ 44). On November 8, 2011, Plaintiff's attorney asked Wells Fargo to reverse the action on the loan account, restore the proceeds, and pay the repair invoices. (Id. ¶ 45). Wells Fargo responded on December 7, 2011, declining to take the actions requested. (Id. ¶¶ 46-47).

Plaintiff filed this lawsuit on January 23, 2012. (Compl., Doc. 1). The Amended Complaint contains five counts, but only two of those—Counts Two and Three—are now at issue. Wells Fargo seeks to dismiss these counts for failure to state a claim on which relief can be granted.

### III. Discussion

#### A. Count Two

In Count Two of the Amended Complaint, Plaintiff brings a claim against Wells Fargo for violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et

seq. Specifically, Plaintiff contends that Wells Fargo failed to comply with 12 U.S.C. § 2605(e). That subsection, titled "Duty of loan servicer to respond to borrower inquiries," provides that "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20[1] days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period." Id. § 2605(e)(1)(A). The statute also requires a servicer that receives a qualified written request ("QWR") to make appropriate corrections to the account, provide a written explanation or clarification to the borrower regarding why the servicer believes the account is correct, or provide information requested by the borrower and the name of a contact person. Id. § 2605(e)(2).

Plaintiff alleges that the letter that his attorney sent to Wells Fargo on October 19, 2011, was a QWR under this provision, that Wells Fargo failed to acknowledge receipt of that letter within twenty days as required, and that Wells Fargo failed to provide a written explanation or clarification regarding the terms of the mortgage that purportedly required signed forms prior to paying the contractors. (Am. Compl. ¶¶ 62, 65-66). Wells Fargo does not challenge receipt of the letter or failure to acknowledge it, but Wells Fargo contends that this claim fails because the October 19, 2011 letter does not constitute a QWR and because Plaintiff has not alleged damages.

---

[1] The statute has been amended and now provides for a five-day response time instead of a twenty-day response period. Plaintiff alleges the twenty-day period in the Amended Complaint, and that version of the statute is quoted here.

### 1. QWR

For the purposes of § 2605(e), RESPA defines a QWR as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." Id. § 2605(e)(1)(B). And, as set forth in § 2605(e)(1)(A) quoted earlier, the QWR must be "for information relating to the servicing of [the] loan." "Servicing" is defined in the statute as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . , and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." Id. § 2605(i)(3).

Wells Fargo argues that the October 19 letter is not a QWR because it "has nothing to do with any scheduled periodic payment due under the loan" and "does not relate to the 'servicing' of Plaintiff's loan." (Doc. 100 at 5). Additionally, Wells Fargo asserts that "the letter does not contain any statement of reasons that the account is in error in connection with any scheduled periodic payments by Plaintiff or even in connection with the insurance proceeds." (Id. at 6). Plaintiff, on the other hand, asserts that the letter states the reason Plaintiff believes the account is in error—that Wells Fargo, as the servicer, failed to disburse the insurance proceeds in accordance with the terms of the mortgage.

Although Plaintiff did not attach the October 19 letter to his Complaint or Amended

Complaint, Wells Fargo has attached it to its motion to dismiss, and the Court may properly consider it at this stage of the case because it is central to and referenced in the Amended Complaint.[2] See LaGrasta, 358 F.3d at 845.  The letter includes Plaintiff's name and loan number and recounts the history of the damage to the property, the issuance of checks by the insurer, Plaintiff's forwarding of the checks to Wells Fargo, and Wells Fargo's failure to disburse the proceeds to pay the repair invoices. (Ex. A to Doc. 100, at 1-2).  The letter then quotes the mortgage as providing that insurance proceeds "'shall be applied to restoration or repair of the Property.'" (Id. at 2 (quoting mortgage)).  Plaintiff's attorney then states in the letter that "[i]t is my client's request that the agents of Wells Fargo issue payment directly to the contractors who have now submitted final bills and are entitled to be paid for their services." (Id.).  Enclosed with the letter were the final bills that had been submitted to Plaintiff by the contractors. (See id.).

In his response memorandum, Plaintiff acknowledges that he has not found a case directly on point regarding QWRs in the context insurance proceed payments, but he correctly argues that the cases cited by Wells Fargo give examples of what constitutes a QWR on other facts, without precluding Plaintiff's letter from also constituting one.  The Court has located one RESPA case involving insurance proceeds, though the exact issue at hand was not discussed.  In Rideaux v. Travelers Ins. Co., No. 12 C 2592, 2013 WL 3354462, at *2 (N.D. Ill. July 1, 2013), the plaintiff alleged "that she sent a qualified written request . . . asking what was done with the check sent by [an insurance company] to the

---

[2]Plaintiff has not objected to consideration of the letter. (See Doc. 103 at 3 (noting Wells Fargo's attachment of the letter to its motion)).

mortgage servicer." The Court denied the servicer's motion to dismiss, though the only argument made by the servicer as to the sufficiency of the purported QWR pertained to inclusion of an account number. See id. at *2-3.

This Court finds that the October 19 letter does constitute a QWR under § 2605(e). The letter contests the position that Wells Fargo had taken with regard to handling of the insurance proceeds and requests that Wells Fargo pay the contractors with the proceeds, as allegedly provided for in the mortgage. The requested payouts of proceeds forwarded to Wells Fargo by Plaintiff constitute "such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan" so as to bring the terms of the letter within the definition of "servicing" in § 2605(i)(3). The letter involved "information relating to the servicing of [the] loan" as in § 2605(e)(1)(A), and it "include[d] a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provide[d] sufficient detail to the servicer regarding other information sought by the borrower" under § 2605(e)(1)(B)(ii).

2. Damages

Wells Fargo also contends that Count Two fails because Plaintiff has not alleged damages, noting that § 2605(f)(1) provides that individuals may recover "actual damages to the borrower as a result of the failure" to comply with the statute and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of the section, in an amount not to exceed $1,000."[3]

---

[3]The statute has been amended to provide for a $2,000 maximum. Wells Fargo cites the prior version of the statute, and that is the version quoted.

The damages alleged by Plaintiff in this count are $222,999.24—the total amount of all three of the insurance checks—but Plaintiff does not allege that these are his actual damages as a result of Wells Fargo's alleged noncompliance with § 2605(e). In his response memorandum, Plaintiff acknowledges that "his Amended Complaint will need to be amended to properly plead damages." (Doc. 103 at 6).

In light of Plaintiff's concession regarding the pleading of damages, Count Two will be dismissed without prejudice and with leave to replead.

B. Count Three

In Count Three, Plaintiff brings a claim for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. Plaintiff alleges that Wells Fargo violated 15 U.S.C. § 1666(d) by not properly crediting the amount of the credit balance on the loan account that was created by the transmittal to Wells Fargo of the insurance payments. In its motion to dismiss, Wells Fargo argues that § 1666(d) only pertains to open-end consumer credit plans, not closed-end transactions like the mortgage involved in this case.

As acknowledged by Plaintiff, Wells Fargo is correct about the scope of § 1666(d). However, as noted by Plaintiff it is obvious from the substance of the allegations of the Amended Complaint that Count Three is brought under § 1666d, not § 1666(d). Section 1666d provides:

> Whenever a credit balance in excess of $1 is created in connection with a consumer credit transaction through (1) transmittal of funds to a creditor in excess of the total balance due on an account, (2) rebates of unearned finance charges or insurance premiums, or (3) amounts otherwise owed to or held for the benefit of an obligor, the creditor shall—

> > (A) credit the amount of the credit balance to the consumer's account;
> > (B) refund any part of the amount of the remaining credit balance, upon request of the consumer; and
> > (C) make a good faith effort to refund to the consumer by cash, check, or money order any part of the amount of the credit balance remaining in the account for more than six months. . . .

Consistent with this statutory language, Plaintiff alleges that a credit balance in excess of $1.00 was created via transmittal of the insurance proceeds to Well Fargo, that Wells Fargo held the amount of the credit balance for more than six months, and that Wells Fargo did not make a good faith effort to refund the credit balance. (Am. Compl. ¶¶ 74-81).[4]

Thus, while the Amended Complaint contains a repeated typographical error—via inclusion of parentheses around the "d"—as to the correct number of the section at issue, this typographical error does not warrant dismissal of this claim. It is clear from Plaintiff's allegations and the quoted statutory language in this count which section was intended, and Wells Fargo itself notes the correct section number in a footnote. (See Doc. 100 at 8 n.3). Although Wells Fargo is clearly on notice of the nature of and basis for Count Three, it makes no argument as to the sufficiency of the pleading of this claim as a § 1666d claim, merely stating that "[t]o the extent Plaintiff intended to bring a claim pursuant to . . . § 1666d, he cited to the wrong statute." (Id.). Count Three will not be dismissed, but Plaintiff shall correct the statutory section number in this count when he files his second amended complaint to replead Count Two.

---

[4] Section 1666(d) does not contain any of the statutory language quoted in the Amended Complaint.

## IV.  Conclusion

In accordance with the foregoing, it is **ORDERED** as follows:

1.  Wells Fargo's Motion to Dismiss Counts Two and Three of the Amended Complaint (Doc. 100) is **DENIED in part** and **GRANTED without prejudice in part**.  The motion is **granted without prejudice** as to Count II, which is dismissed without prejudice and with leave to amend so that Plaintiff can allege a basis for damages.  The motion is **denied** in all other respects.

2.  Plaintiff may file a second amended complaint **on or before Friday, October 11, 2013**.  In the second amended complaint, Plaintiff may amend Count Two, and Plaintiff shall also correct the typographical error in the number of the statute at issue in Count Three.

**DONE** and **ORDERED** in Orlando, Florida this ___27___ day of September, 2013.

                                                          JOHN ANTOON II
                                                          United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party